†MAUD PARIS v. CARRIE J. WINTERBURN.

1. WHEN REMAINDER OVER ON ATTEMPT TO ALIENATE LIFE ESTATE IS VALID.

A devisee by his will gave to his wife three or more separate parcels of real estate, "for
the term of her natural life, or as long as she may remain my widow."   He then pro-
vided that after the death of the wife, his son was to have the use and benefit of the
property during the period of his natural life, but without the right or power to
alienate, charge or incumber, or in any manner anticipate his life estate in said prop-
erty.   And at his death, or when he attempted to so alienate, charge, incumber or
anticipate his life estate, the property was to go to his children.   During the life of
the widow she and the son executed a mortgage on one of the parcels, which during
the life-time of the widow was fully paid and satisfied..   Held:

That the interest devised to said J. C. P. in said premises, was one which but for the pro-
visions of the will, might have been aliened or incumbered by him during the life-
time of A., the widow.

2. PROVISION OF WILL TERMINATING LIFE ESTATE UPON ATTEMPT TO ENCUMBER, IS VALID.

That the provision of such will that when the son "shall attempt to so alienate, charge, in-
cumber or anticipate his said life estate," that it should at once, pass to his children,
was valid, and on the execution and taking effect of such mortgages respectively, his
estate in the land so mortgaged, ceased and determined, and the same passed to the
plaintiff, his only child.

3. INVOLUNTARY SALE ON JUDGMENT IS NOT AN ATTEMPT TO ALIENATE.

That the sale of the other parcel of such real estate, on executions issued on judgments ren-
dered against J. C. P., did not operate to forfeit his life estate therein, as it was invol-
untary, and not an attempt by him to alienate, charge, incumber or anticipate.

4. TERMINATION OF LIFE ESTATE BY REMARRIAGE.

A devise to the widow for life, or so long as she remains a widow, and after her death to a
son, may mean to the son not only at death, but at the termination of the life estate by
the widow's remarriage.

Error to the Court of Common Pleas of Hamilton county.

SMITH, J.

. The error assigned in this case is the action of the court of common pleas in
sustaining the demurrer to the amended petition of the plaintiff below, and in
dismissing the action.

The petition alleges in substance, that on the 5th day of December, 1872, Daniel Paris,
died, seized in fee-simple of several parcels of land in this city, two of which tracts are
specifically described therein.   That by the will of Paris, said real estate so described was,
devised to his wife, Amanda C. Paris, "for the term of her natural life, or as long as she
may remain my widow."   The will then devised as follows:   "It is my will that after the
death of my said wife, my said son Joseph C. Paris is to have the use and benefit of said
property named in said clauses of the fourth item of my said will, during the period of his,

---

†In this case, in the supreme court, the demurrer to answer was overruled, and case·
dismissed, May 14, 1895.   2 Legal News, 495.

natural life, but without the right or power to alienate, charge or incumber, or in any manner anticipate his said life estate in said property. And at his death, or when he shall attempt to so alienate, charge, incumber or anticipate his said life estate, I will and bequeath that the said property shall go to his children, if at that time he shall have any children living, to have the use and benefit of said property during the lifetime of my said son Joseph C. Paris, and upon his death, I give and bequeath the said property to the children of said Joseph C. Paris, if he should have any children surviving him, and their heirs forever."   *   *   *

That the said Amanda C. Paris died January, 1881, and that said Joseph C. Paris entered into possession of said real estate, and so continued until it was sold under the proceedings hereinafter stated. That on December 23, 1878, he, with Amanda C. Paris, executed and delivered to one Schwab a mortgage on a part of said premises, (which part is specifically described in the petition), to secure the sum of $325, due six months from date, and the mortgage was duly recorded, and this mortgage was fully paid August 30, 1880, and satisfaction entered thereon. And on October 16, 1878, said Joseph C. Paris executed and delivered to one Westphal another mortgage on another part of said property, (which part is specifically described in the petition), to secure the sum of $200, due in six months, which mortgage was also duly recorded, but the debt was paid and the mortgage cancelled June 9, 1879.

That at the time of the death of David Paris, the testator, his son Joseph C. Paris was a married man and had one child, the plaintiff, now (December 6, 1890) 21 years of age—and about February 21, 1884, Maria Paris, the wife of Joseph, and mother of the plaintiff, brought three suits against him, and which in part, were for services rendered to him by her in the maintenance of the plaintiff. Judgments were rendered against him for $1,680, in the aggregate, and executions were issued thereon, and levied on his life estate in the real property described in the petition, as given to him by the will of his father, and in July, 1884, his interest therein was sold under the order of the court to pay such judgments, and the sale was confirmed, and the proceeds of sale applied thereon. The plaintiff is the only child of Joseph C. Paris, who is still living. The defendant claims to be the owner of said property during the life-time of Joseph C. Paris, and it is averred that she unlawfully keeps the plaintiff, who is the owner and entitled to the possession thereof, out of the possession of the same. Wherefore she seeks to recover the possession, and damages for its unlawful detention. Was the demurrer to this petition properly sustained by the court of common pleas?

The first question presented is, as to the nature of the estate in this land, given by the will of Daniel Paris to his son Joseph, and whether it was such an one, as entitled or gave him the power (unless prevented by the terms of the will) to alien, charge or incumber it during the life of his mother, or after her marriage or death.

It is clear that the will gave to Amanda C. Paris, the mother, a life estate in all of this property—if she married, however, her estate therein was to cease. But this provision did not prevent it being a life estate, though subject to be divested if she should marry again. Nimmons v. Westfall, 33 O. S. 214. The will then provides, that after her death, Joseph C. Paris was to have the use and benefit of the real estate so devised, for his natural life, subject, however, to the provision against the alienation or incumbering the same, which will be mentioned more particularly hereinafter. This was also the gift of a life estate to Joseph, subject to be divested on the doing of the acts prohibited, if such prohibition was valid.

It is the claim of the counsel for the defendant in error, that it was not valid, and if it were, that under the law, no such estate was given to Joseph that he could alien or incumber it, at least during the life of his mother, and that an attempt to do so was utterly invalid, and could have no effect to divest him of his interest in the land, or pass it to his daughter, the plaintiff. That his estate was purely contingent, and could not be aliened or incumbered by him.

We are of the opinion that the devise so made to Joseph, gave him a vested remainder for life in the land, which took effect on the death of the testator. That the provision of the will which first gave the estate to the mother "for the term of her natural life, or as long as she may remain my widow," did not convert the estate of the son into a contingent remainder. We think it was the purpose of the testator, to give the estate to his son, on the termination of the estate of his mother, either by her death or marriage, though the will says, in one of its provisions, that after the death of the wife, the son is to have the life estate. But no

provision is made thereby, as to what should become of the estate if she should marry between that time and her death. But even if this be not so, and the will should operate in any way to make the interest of Joseph a contingent one, and not to take effect until her death, according to strict law, and thus defeat his remainder, still we understand the law to be, that he would take the estate for his life, on the marriage or death of his mother, by way of executory devise. That the mother would not be allowed to defeat his estate, by marrying, refusing to take under the will, or otherwise. See Thompson v. Hoop, 6 O. S. 481. But it seems to us that it is not a matter of moment in this case whether this interest of Joseph was vested or contingent, for we understand the law of Ohio to be settled that "any future contingent interest in real estate, in the nature of a contingent remainder or executory devise, being an interest in the land known to the law, is transmissible by descent or deed. Thompson v. Hoop, 6 O. S. 481; Needles' v. Needles', 7 O. S. 432.

*Second* what is the effect of the provision of the will, which attempts to restrain the son from aliening, charging, incumbering or anticipating his life estate in the property, or that which provides that when he shall attempt to do so, that his children should take an estate therein for his life? It is conceded by counsel for the plaintiff in error, that the first of these provisions is invalid, as being a life estate to the son, and an attempt to deprive him, while he retains his estate, of the right to use and deal with it as the owner of such an estate has the right to do. But we are of the opinion that the second of the two, which provides that on his attempt to do it, his right should cease and determine, and the estate should go to his children during his life, was a good limitation, and that on the doing of the acts mentioned, his daughter, the plaintiff, became entitled, by virtue of the terms of the will, to so much of the property (and so much only) as Paris had incumbered or attempted to incumber by the mortgages. The devise to him was not of the whole life estate absolutely, but to him for life unless he did some one of the acts prohibited, when it was to pass to his child. We think the clear weight of authority is that the testator had a right to place such restriction on the devise, and to have his interest cease and go to another, on a breach of the condition named. Buckner v. Mear, 26 O. S., 515. Gray on Alienation. The two mortgages made by Paris on the two parcels operated then to put an end to his interest therein, notwithstanding the fact that they were executed before he came into th actual possession of the land, for he was prohibited from anticipating, as well as incumbering, his life estate therein, and although the mortgages were, in fact, cancelled and satisfied before the death of his mother.

But we hold that the sale of the property under judicial proceedings, for the satisfaction of a personal judgment rendered against him, was not a breach of the condition on which he held it. He did not alien, charge, incumber or anticipate his estate. The judgment and sale under it were not voluntary on his part, and did not operate to transfer the remainder of his interest to the plaintiff.

But as the petition, in our opinion, made a good case for the recovery of a part of the real estate described therein, the demurrer thereto was improperly sustained, and for this error, and for dismissing the petition, the judgment of the court of common pleas will be reversed, with costs, and the case remanded to that court to be further proceeded with according to law.

Maulsbury & Hicks, for plaintiff in error.

Coppock & Gallagher, for defendant in error.